AO 106 (Rev. 06/09) Application for a Search Warrant

RTA for AUSA Alexander

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

NOV 1 7 2017

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                DEPUTY

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) |
| (1) one LG Cellular Device Model number: LGMS210; IMEI: 358772-08-173528-6 | ) ) ) ) |

Case No. '17MJ9239

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A incorporated herein by reference

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Possession with the intent to destribute |

The application is based on these facts:

See Attached Affidavit of Special Agent D'Andre Powell

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

D'Andre N. Powell
*Printed name and title*

Sworn to before me and signed in my presence.

Date: *11.17.2017 @ 9:00 a.m.*

_____
*Judge's signature*

City and state: El Centro, California

Peter C. Lewis, U.S. Magistrate Judge
*Printed name and title*

RTG for musa Aluvander

1  **AFFIDAVIT**

2  I, D'Andre Powell, being duly sworn, hereby state as follows:

3  **INTRODUCTION**

4  1.      This affidavit supports an application for a warrant to search the following

5  electronic devices (collectively **Target Device(s)**):

6  
7        a.      LG Model LGMS210
           IMEI: 358772-08-173528-6
8             **(Target Device #1)**;

9        b.      Samsung Galaxy Model SCH-I535
           IMEI: 990003343 166548
10            **(Target Device #2)**

11

12 as described in Attachments A-1 and A-2, and seize evidence of crimes, specifically,

13 violations of Title 21, United States Code, Section(s) 841 and 846.  This search supports

14 an investigation and prosecution of Diana GUZMAN ("Defendant" or "GUZMAN")

15 for the crimes mentioned above.  A factual explanation supporting probable cause

16 follows.

17 2.      The **Target Devices** were seized from Defendant incident to her arrest for

18 violation of Title 21, United States Code, Section 841(a)(1), Possession with the Intent

19 to Distribute a Controlled Substance, at the United States Border Patrol Highway 86

20 Checkpoint Near Westmorland, California on August 27, 2017.  The **Target Devices**

21 are currently in the possession of the Drug Enforcement Administration, 2425 La

22 Brucherie Road, Imperial, CA 92251, Evidence Vault.

23 3.      Based on the information below, there is probable cause to believe that a

24 search of the **Target Devices** will produce evidence of the aforementioned crimes, as

25 described in Attachments B-1 and B-2.

26 4.      The information contained in this affidavit is based upon my experience

27 and training, consultation with other federal, state, and local law enforcement agents.

28 The evidence and information contained herein was developed from interviews and my

1

review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Devices**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5.      I, D'Andre Powell, am employed as a Special Agent with the Drug Enforcement Administration (DEA) and have so been employed since May 2014. I am currently assigned to the Imperial County District Office (ICDO) Enforcement Group 52. Upon being hired as a DEA Special Agent, I attended an eighteen week DEA academy in Quantico, Virginia, where I received training in all aspects of narcotics investigations, including, but not limited to, the enforcement of drug laws, investigation of drug trafficking, drug recognition and terminology, case management undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance. Furthermore, I was certified in November 2014 by the California State Attorney General in the practical, technical, and legal aspects of court ordered wiretaps as authorized under California Penal Code Section 629 et seq.

6.      In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal.

7.      I am familiar with and have used many of the traditional methods of investigation, including, visual surveillance, informant and witness interviews, defendant debriefings, undercover operations, and the seizure of drug evidence.

8.      I have participated in drug investigations leading to the seizure of illegal narcotics and the arrests of individuals for drug law violations. Although the nature of my ongoing work with DEA requires that I keep apprised of recent trends and developments involved in the investigations of narcotics traffickers, I regularly communicate with agents

1 from the United States Border Patrol, Customs and Border Protection, Homeland Security

2 Investigations, Federal Bureau of Investigations and various other state and local law

3 enforcement officers. Furthermore, I have discussed their investigative techniques and

4 experiences with them operating within the Southern District of California.

5        9.    Based upon my training and experience as a Special Agent, and

6 consultations with law enforcement officers experienced in narcotics trafficking

7 investigations, and all the facts and opinions set forth in this affidavit, I submit the

8 following:

9

10     a.    Drug traffickers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice

11            messages.

12

13     b.    Drug traffickers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is

14            in transit.

15     c.    Drug traffickers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal

16            cargo will arrive at predetermined locations.

17

18     d.    Drug traffickers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

19

20     e.    Drug traffickers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture

21            of marked and unmarked units, as well as the operational status of

22            checkpoints and border crossings.

23     f.    Drug traffickers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics

24            and/or drug proceeds.

25

26     g.    The use of cellular telephones by conspirators or drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not

27            limited to emails, text messages, photographs, audio files, videos, call logs,

28            address book entries, IP addresses, social network data, and location data.

10.     Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data forcellular telephone subscribers.  Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data.  This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.  Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

a.     tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or some other federally controlled substances within the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other federally controlled substances within the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or

transportation with the intent to distribute methamphetamine or some other federally controlled substances within the United States;

d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12.    I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

13.    By virtue of my employment as a Special Agent with DEA, I have performed various tasks, which include, but are not limited to:

a.    Functioning as a surveillance agent and thereby observing and recording movements of persons trafficking in controlled substances and those suspected of trafficking in controlled substances;

b.    Interviewing witnesses, cooperating individuals, and informants relative to the illegal trafficking of controlled substances and the distribution of monies and assets derived from the illegal trafficking of controlled substances (laundering of monetary instruments); and

5

1
2

       c.     Functioning as a case agent, which entails the supervision of specific investigations involving the trafficking of narcotics.

### FACTS SUPPORTING PROBABLE CAUSE

#### Investigation Overview

     14.    On August 27, 2017, a United States Border Patrol Agent ("BPA") was assigned to the United States Border Patrol ("USBP") Highway 86 Checkpoint north of Westmorland, California. At approximately 11:00 p.m., a BPA was working primary immigration inspections when a Toyota Camry bearing California license plate number 7YZW679 and VIN 4T1BF3EK7AU542589 approached the inspection area. The vehicle was driven by Diana GUZMAN. While a BPA conducted an immigration inspection of the driver, another BPA and his human narcotics detection dog conducted a pre-primary canine sniff. The BPA and his dog are a certified United States Border Narcotic Canine Detection team, who are certified in the detection of marijuana, methamphetamine, cocaine, heroin, and concealed humans.

     15.    During the exterior canine sniff, the dog alerted to the passenger side rear tire well. The BPA then referred the Toyota Camry to secondary inspection, where GUZMAN gave consent to conduct a sniff of the vehicle. At this time, the dog alerted to the passenger side rear tire well again. Upon further inspection, a BPA observed abnormal tooling on the gas tank harness. BPAs subsequently accessed the sending unit. BPAs observed an abnormal amount of dust on the cap, and then noticed a set of finger prints. BPAs removed the cap of the sending unit and observed several bundles within the gas tank. BPAs removed 28 vacuum sealed packages.

     16.    The 28 packages weighed approximately 19.151 kilograms (42.22 pounds) and tested positive for methamphetamine. GUZMAN was arrested for possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1), following the discovery of the narcotics concealed inside of her vehicle. Incident to the arrest of GUZMAN, federal authorities seized the **Target Devices** 1 and 2 from her vehicle.

17.    A Complaint was filed on August 27, 2017 and proceedings were initiated on that date.  GUZMAN was charged by Indictment in Case Number 17CR02967-BAS on September 20, 2017 and the case remains pending with a Motion Hearing/Trial Setting set for October 30, 2017.

18.    Based upon my experience and investigation in this case, I believe there is probable cause to believe that the **Target Devices** contain evidence of violations of Title 21, United States Code, Sections 841 and 846; Possession of a Controlled Substance with Intent to Distribute.  Specifically, I believe that Defendant, as well as other persons known and as yet unknown, was involved in an ongoing conspiracy to distribute methamphetamine or some other prohibited drugs.  Probable cause also exists to believe that Defendant used the **Target Devices** to coordinate with co-conspirators, regarding the possession and delivery of the methamphetamine, and to otherwise further this conspiracy within the United States.

19.    I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Devices** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics trafficking activities of Defendant, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures, audio files, videos and other digital information are stored in the memory of the **Target Devices**.

20.    Finally, drug trafficking conspiracies require intricate planning and coordination.  This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States.  Coconspirators communicate with one

1  another in efforts to ensure success in getting their valuable cargo to its destination
2  within the United States.  In this case, evidence supports probable cause that Defendant
3  began working with drug trafficking coconspirators as early as July 22, 2017.  This is
4  based upon a review of (1) border crossing records showing Defendant crossing
5  throughout 2017 and the vehicle crossing starting in July 2017; (2) the vehicle's
6  registration showing a registration date of July 14, 2017.  Therefore, the date range for
7  this search should go from June 1, 2017 through August 27, 2017.

## METHODOLOGY

9       21.    It is not possible to determine, merely by knowing the cellular/mobile
10  telephone's make, model and serial number, the nature and types of services to which
11  the device is subscribed and the nature of the data stored on the device.  Cellular/mobile
12  devices today can be simple cellular telephones and text message devices, can include
13  cameras, can serve as personal digital assistants and have functions such as calendars
14  and full address books and can be mini-computers allowing for electronic mail services,
15  web services and rudimentary word processing.    An increasing number of
16  cellular/mobile service providers now allow for their subscribers to access their device
17  over the internet and remotely destroy all of the data contained on the device.  For that
18  reason, the device may only be powered in a secure environment or, if possible, started
19  in "flight mode" which disables access to the network.  Unlike typical computers, many
20  cellular/mobile telephones do not have hard drives or hard drive equivalents and store
21  information in volatile memory within the device or in memory cards inserted into the
22  device.  Current technology provides some solutions for acquiring some of the data
23  stored in some cellular/mobile telephone models using forensic hardware and software.
24  Even if some of the stored information on the device may be acquired forensically, not
25  all of the data subject to seizure may be so acquired.  For devices that are not subject to
26  forensic data acquisition or that have potentially relevant data stored that is not subject
27  to such acquisition, the examiner must inspect the device manually and record the
28

1 | process and the results using digital photography.  This process is time and labor
2 | intensive and may take weeks or longer.

3 |        22.    Following the issuance of this warrant, I will collect the subject
4 | cellular/mobile telephones and subject them to analysis.  All forensic analysis of the
5 | data contained within the telephones and memory cards will employ search protocols
6 | directed exclusively to the identification and extraction of data within the scope of this
7 | warrant.

8 |        23.    Based on the foregoing, identifying and extracting data subject to seizure
9 | pursuant to this warrant may require a range of data analysis techniques, including
10 | manual review, and, consequently, may take weeks or months.  The personnel
11 | conducting the identification and extraction of data will complete the analysis within
12 | ninety (90) days, absent further application to this court.

13 |                              **CONCLUSION**

14 |        24.    Based on all of the facts and circumstances described above, there is
15 | probable cause to conclude that Defendant used the **Target Devices** to facilitate
16 | violations of Title 21, United States Code, Section(s) 841 and 846.

17 |        25.    Because the **Target Devices** were promptly seized during the investigation
18 | of Defendant trafficking activities and have been securely stored, there is probable cause
19 | to believe that evidence of illegal activities committed by Defendant continues to exist
20 | on the **Target Devices**.  As stated above, I believe that the date range for this search is
21 | from June 1, 2017 through August 27, 2017.

22 | //
23 | //
24 | //
25 | //
26 | //
27 | //
28 | //

1      26.    WHEREFORE, I request that the court issue a warrant authorizing law

2  enforcement agents and/or other federal and state law enforcement officers to search

3  the items described in Attachments A-1 and A-2, and the seizure of items listed in

4  Attachments B-1 and B-2, using the methodology described above.

5

6  I swear the foregoing is true and correct to the best of my knowledge and belief.

7

8  

9  D'Andre Powell

   DEA Special Agent

10

11  Subscribed and sworn to before me this _____ 17 _____ day of November, 2017.

12

13

14

15  The Honorable Peter Lewis

16  United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28

## ATTACHMENT A-1

### PROPERTY TO BE SEARCHED

The following property is to be searched:

> LG Model LGMS210
> IMEI: 358772-08-173528-6
> (Target Device #1);

**Target Device #1** is currently in the possession of the Drug Enforcement Administration, 2425 La Brucherie Road, Imperial, CA 92251, Evidence Vault.



## ATTACHMENT B-1

### ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of June 1, 2017 through August 27, 2017:

a.  tending to indicate efforts to import methamphetamine, or some other federally controlled substances from Mexico into the United States, or possess and/or transport with the intent to distribute methamphetamine or some other federally controlled substances within the United States;

b.  tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other federally controlled substances within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other federally controlled substances within the United States;

d.  tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States, or possession and/or transportation with the intent to distribute methamphetamine or some other federally controlled substances within the United States, such as stash houses, load houses, or delivery points;

## ATTACHMENT B-1 CONTINUED

e.      tending to identify the user of, or persons with control over or access to, the **Target Devices**; and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections** 841 and 846.